**Mark Alfred GARMON, Appellee,**

v.

**Robert FOUST, Appellant. (Two Cases)**

**Nos. 83–1563, 83–1857.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1983.

Decided Aug. 20, 1984.

See also 8 Cir., 668 F.2d 400.

J.M. Sullivan, Asst. City Atty., Des Moines, Iowa, for appellant.

Gregory L. Biehler, Smith, Schneider & Stiles, P.C., Des Moines, Iowa, for appellee.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Mark Garmon, a student at a private university, brought a civil rights action under 42 U.S.C. § 1983 alleging that Robert Foust, a municipal police officer, violated his Fourth Amendment rights by unlawfully seizing and searching without a warrant a package that had been mailed to Garmon, but which was undelivered and in the custody of university employees at the time the officer took possession of it. The district court held that Foust was immune from liability for the search, directed a

verdict for Garmon on the issue of liability for seizure of the package, and submitted the issue of damages alone to the jury. After the jury returned a verdict of one dollar in damages, the district court awarded attorney's fees. Foust contends on appeal that he was entitled to qualified immunity as a matter of law. We agree. Hence, we reverse and remand for entry of judgment in favor of Foust on the issue of liability and accordingly vacate the district court's award of attorney's fees.

On December 17, 1975, a special-delivery first-class mail package addressed to Mark Garmon was delivered to the receptionist at Garmon's university residence hall. According to the usual practice a postal employee would deliver the day's mail for the residents to the hall's mail room. It was then the receptionist's task to sort the mail and place the mail items in individual mailboxes. If an item was too large to fit into a mailbox the receptionist would place a slip of paper in the addressee's mailbox to notify the student that a parcel was being held. After receiving Garmon's package the receptionist put it in the package room. In handling the package, however, she noticed that it emitted a very strong smell and that it felt as if it contained hay. Because of the peculiar qualities of the package, the receptionist called the hall director and asked him to examine it. After examining the package, the hall director, who had received training in detection of packages containing marijuana, suspected that the package indeed contained marijuana and called the director of student residences, who then communicated with the narcotics squad. The university employees took the package away from the mail area and to the hall director's office for safekeeping.

Foust came to examine the package the next day, December 18, 1975. He brought with him a dog specially trained to detect marijuana, cocaine, and heroin. The dog found the package after it was hidden in the hall director's office. The package was not opened by the university employees or Foust. Foust then reached an agreement with the hall director and the director of student residences that he would take custody of the package and secure a search warrant. Foust prepared an information for a search warrant and took it and the unopened package before an Iowa district court judge. Before signing the warrant, however, the judge ordered Foust to open the package. Foust complied and marijuana was found in the package. The package was immediately resealed. Later in the day on December 18 the package was returned to the residence hall and a notice was placed in Garmon's mailbox advising him that a package was being held for him. After Garmon picked up the package, police officers executed a search warrant for his room, seized the opened package and marijuana, and arrested him. The state did not pursue criminal charges after the seized evidence was suppressed.

█ Police officers are afforded a qualified immunity from liability in suits brought under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court held that officials who enjoy qualified immunity "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2739.

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should * * * permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.

*Id.* (footnotes omitted). Unlike the present case, *Harlow* did not involve an action under 42 U.S.C. § 1983; nevertheless, the Court indicated in a footnote that the immunity standards announced in that case would also apply to section 1983 suits. *See*

id. at 818 n. 30, 102 S.Ct. at 2738–39 n. 30, quoting Butz v. Economou, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). If the undisputed facts show that Foust did not violate "clearly established" Fourth Amendment rights when he took possession of the package, summary judgment should have been entered in his favor by the district court.

The Fourth Amendment ensures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The protection of the Fourth Amendment extends to items in the mails. See United States v. Van Leeuwen, 397 U.S. 249, 251, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970); Ex parte Jackson, 96 U.S. (6 Otto) 727, 733, 24 L.Ed. 877 (1878). In the case before us, we consider only the issue of Foust's liability arising from his taking possession of the unopened package and transporting it from the residence hall without having obtained a warrant. Garmon does not challenge Foust's investigation of the incident, including exposure of the package to the dog. In addition, we are not concerned in any way with the lawfulness of the search of the package, since Garmon did not cross-appeal from the district court's holding that Foust is immune from liability for the search because it was undertaken at the behest of a judge. Nor are we concerned with the propriety of the actions of the university employees. The protection afforded by the Fourth Amendment has been "consistently construed * * * as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Jacobsen, —— U.S. ——, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), quoting Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting); see also Coolidge v. New Hampshire, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 2048–50, 29 L.Ed.2d 564 (1971); Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

Foust contends that by the time he took possession of the package it had already been seized by university employees and that his receipt of the package from these private individuals did not amount to a seizure subject to the requirements of the Fourth Amendment. Within the meaning of the Fourth Amendment, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, supra, 104 S.Ct. at 1656 (footnote omitted). In Jacobsen the Court held that a seizure occurred when Drug Enforcement Administration agents took custody of a package and its contents from employees of a private carrier. "[T]he decision by governmental authorities to exert dominion and control over the package for their own purposes clearly constituted a 'seizure' * * *." Id. at 1660 n. 18. We believe that Foust's assertion of dominion and control over the package and its contents for his own purposes was a seizure. Hence, we must reject Foust's argument that he was entitled to summary judgment because his actions did not constitute a seizure of the package within the meaning of the Fourth Amendment.

Even if we take for granted that the package was still in the mail when Foust seized it without a warrant, his conduct did not violate the Fourth Amendment if the seizure was reasonable. See United States v. Jacobsen, supra, 104 S.Ct. at 1660–61 and n. 18; United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 2641–45, 77 L.Ed.2d 110 (1983). The Supreme Court has indicated that a package in the mail may be detained on the basis of reasonable suspicion to believe it contains contraband pending further investigation directed toward establishing probable cause which will support issuance of a search warrant. See United States v. Van Leeuwen, supra, 397 U.S. at 252–53, 90 S.Ct. at 1032–33. No interest protected by the Fourth Amendment was invaded in Van Leeuwen by for-

warding packages the following day, rather than on the same day they were deposited in the mail. *Id.* at 253, 90 S.Ct. at 1032. Detention of the packages for this limited time was deemed the prudent course to take, rather than letting them enter the mails and trying to retrieve them later to execute the search warrant. *Id.* In *United States v. Hillison,* 733 F.2d 692 (9th Cir.1984), the court relied upon *Van Leeuwen* when it held that the segregation and nine-hour detention of a mailed package on the basis of a subjective assessment of suspicious behavior, pending a determination of probable cause, did not violate the Fourth Amendment. *See id.* at 695–96. "[T]he main Fourth Amendment interest in a mailed package attaches to the privacy of its contents, not the speed with which it is delivered." *Id.* at 696, *citing United States v. Van Leeuwen, supra,* 397 U.S. at 253, 90 S.Ct. at 1032. We now apply these principles to the facts of the case before us.

■ At the time he took possession of the package Foust had at the least, on the basis of the information he had received from the university employees and his own examination of the unopened package, a reasonable, articulable suspicion, premised on objective facts, that the package contained contraband. Hence, Foust was permitted to detain the package pending the issuance of a search warrant. *See Van Leeuwen, supra,* 397 U.S. at 252–53, 90 S.Ct. at 1032–33. As in *Van Leeuwen,* there was in this case no invasion of an interest protected by the Fourth Amendment as a result of the detention of Garmon's package. Garmon's significant Fourth Amendment interest was in the privacy of the package, but Foust did not invade the contents of the package until he was instructed to do so by a judge. Under the circumstances Foust's custody of the package while seeking a search warrant was nothing more than a form of the limited detention authorized by *Van Leeuwen.* Although it does not appear that the packages were transported after their detention in *Van Leeuwen,* this distinction is one without a difference, since with respect to Garmon's Fourth Amendment rights it is

unimportant whether the detained package remained at the residence hall or accompanied Foust. The detention in this case has the same attributes as the detention in *Van Leeuwen*: delivery of the package was delayed and access to it by law enforcement officers was assured but the addressee's privacy was respected because the contents of the package were not invaded.

In the present case, however, there was a stronger basis for detention of the package than in *Van Leeuwen* since, unlike the officers in that case, Foust had full probable cause to believe the package contained contraband once the dog reacted positively to it. *See United States v. Robinson,* 707 F.2d 811, 815 (4th Cir.1983); *United States v. Waltzer,* 682 F.2d 370, 372 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Goldstein,* 635 F.2d 356, 362 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981); *United States v. Klein,* 626 F.2d 22, 27 (7th Cir.1980). Thus, through actions that are unchallenged by Garmon, Foust had before him a package which he had probable cause to believe contained marijuana. Foust was permitted to seize the package, at least temporarily, pending issuance of a warrant authorizing a search of the package. *See United States v. Jacobsen, supra,* 104 S.Ct. at 1660–61; *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983).

Foust's seizure of the package is further supported by the existence of exigent circumstances:

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*United States v. Place, supra,* 103 S.Ct. at 2641. Once Foust's investigation confirmed the suspicion that Garmon's package contained contraband, exigent circumstances justified the officer's warrantless seizure of the package, since had he not taken possession of it before obtaining a search warrant, there was a risk that the package would be lost, either through mistaken delivery to Garmon, or in some other way. *See id.* The risk of the package's disappearance before a warrant could be obtained outweighed Garmon's interest in possession. *See id.; see also Arkansas v. Sanders,* 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). *Cf. United States v. Van Leeuwen, supra,* 397 U.S. at 253, 90 S.Ct. at 1032 (warrantless detention justified to prevent movement of packages in mail before warrant obtained). Although with the advantage of hindsight it may appear that the risk of the package's disappearance was small, Foust was not required to entrust this valuable evidence of crime to private parties.

Up to this point in our discussion we have assumed that Garmon's package was in the mail at the time Foust took possession of it, and based on that assumption we held that *Van Leeuwen* authorized detention of the package. It is undisputed, however, that Garmon's package had been diverted by university employees from the normal course it would have followed after its delivery to the residence hall. Instead of notifying Garmon of the package's arrival and setting it aside until he called for it, employees of the university took the package away from the mail delivery area of the hall and kept it in the hall director's office pending arrival of a law enforcement officer. In ruling on cross motions for summary judgment which addressed the issue of Foust's qualified immunity the district court noted: "The undisputed facts are set forth in a final pretrial stipulation of the parties filed on October 27, 1980, a copy of which is attached to plaintiff's motion for summary judgment." *Garmon v. Foust,* Civil No. 77–367–2, slip op. at 1 (S.D.Iowa Feb. 11, 1983). According to one of these stipulations, the university employ-

ees "on their own initiative took the package out of the mail." App. 48. Because the cross motions for summary judgment were decided on undisputed facts, no findings of fact can be inferred from the district court's ruling on the motions. Comments from the bench by the district court cited in the dissent, *post* at 1075–1076, were not made until after the motions for summary judgment were ruled upon, and hence, they are not pertinent to our determination whether the district court should have granted summary judgment for Foust.

■ Since it was undisputed before the district court that the package had been taken out of the mail, we must view this fact as established. By taking it out of the mail the university employees had intruded upon Garmon's right to possession of the package. When they voluntarily relinquished possession of the package to Foust he effected no further deprivation of Garmon's right to possession than had been accomplished by private individuals. Although Foust did transport the package away from the residence hall, we do not believe that this action constitutes a significant deprivation of the right to possession beyond that brought about by the university personnel. Nor did Foust exceed in scope any invasion of Garmon's privacy which occurred when the university employees seized and examined the unopened package. Because Foust's actions with respect to the package did not go significantly beyond the private intrusion upon Garmon's possessory and privacy interests, he did not unreasonably intrude upon any "clearly established" Fourth Amendment right when he carried the unopened package away from the residence hall in order to secure a search warrant. *See United States v. Jacobsen, supra,* 104 S.Ct. at 1657–59.

Garmon contends that under *United States v. Kelly,* 529 F.2d 1365 (8th Cir. 1976), a police officer's receipt of items from a private individual who took them constitutes a seizure within the meaning of the Fourth Amendment, which to be lawful

must be accompanied by a warrant or exigent circumstances. In *Kelly* an FBI agent took possession of books and magazines that were made available to him by an employee of a common carrier which had been hired to ship them. *Id.* at 1368. The shipper's employee discovered the books and magazines after cartons containing them were damaged. *Id.* The parties agreed that there was no governmental search since the initial discovery of the packaged materials resulted from a routine damage inspection conducted by the carrier's employee. *Id.* at 1371. Thus, the initial search of the containers was beyond the scope of the exclusionary rule because it had not been established that the search was instigated or assisted by law enforcement officials. *Id.* Without discussion the court assumed that the FBI agent's receipt of the books and magazines amounted to a seizure and went on to decide whether the seizure was unreasonable within the meaning of the Fourth Amendment. *Id.* The court noted that books and magazines are presumptively protected by the First Amendment, and that their seizure demands a greater adherence to the Fourth Amendment warrant requirement, *id.* at 1372, *citing Roaden v. Kentucky*, 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757 (1973), and held that in the absence of exigent circumstances in which police must act immediately to preserve evidence of the crime, warrantless seizure of materials protected by the First Amendment is unreasonable. *United States v. Kelly, supra*, 529 F.2d at 1372. Since no exigent circumstances were present, the warrantless seizure was unreasonable and the evidence was suppressed. *See id.* at 1372–73.

We do not believe that *Kelly* is inconsistent with the result we reach in the present case. As we have concluded, Foust's actions amounted to a seizure within the meaning of the Fourth Amendment. *See United States v. Jacobsen, supra*, 104 S.Ct. at 1656, 1660 and n. 18. We have also determined, however, that the seizure was reasonable, finding that Foust was permitted to seize the package on probable cause to believe that it contained contraband and that exigent circumstances further justified the seizure. Moreover, if *Kelly* imposed more stringent requirements for the seizure in that case than we do in the present case, we note that the court in *Kelly* specifically considered the greater Fourth Amendment protection afforded materials which enjoy a protected First Amendment status. *See United States v. Kelly, supra*, 529 F.2d at 1371–73. This consideration is, of course, not involved in the present case.

In view of the Court's recent opinion in *Jacobsen*, there is another important way in which *Kelly* differs from the case before us. In *Kelly*, after the officer took possession of the books and magazines, but before he obtained a warrant, he examined the items in a way that exceeded the scope of the private intrusion into Kelly's privacy interests. *See United States v. Kelly, supra*, 529 F.2d at 1368. Under *Jacobsen*, the Fourth Amendment was implicated because through his examination the officer obtained "information with respect to which the expectation of privacy ha[d] not already been frustrated." *United States v. Jacobsen, supra*, 104 S.Ct. at 1659. *Cf. United States v. Haes*, 551 F.2d 767, 771 (8th Cir.1977) (warrantless government viewing of films exceeding scope of private search was illegal).

Because Foust was entitled to qualified immunity as a matter of law, we reverse the judgment of the district court and remand for the entry of judgment in his favor. Our disposition of the liability issue makes it unnecessary to consider the attorney's fees issue. We thus do not reach Foust's argument that the amount of attorney's fees was limited by a contingent fee agreement. We note, however, that a panel of this court recently held, in *Sisco v. Alberici Construction Co.*, 733 F.2d 55, 57 (8th Cir.1984), that a contingent fee agreement does not automatically set an upper limit on fee awards.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In finding that the seizure of Garmon's package was reasonable, the majority primarily relies on the assumption that University employees had already removed the package from the mail at the time Foust took possession of it.

This assumption is contrary to the findings of both the state court which presided over Garmon's criminal trial and the district court below. Because the district court's finding was not clearly erroneous, I would affirm its conclusion that the search violated firmly established fourth amendment principles.

According to the state court, "the initial seizure without a warrant of the package in question was from the U.S. mails without a showing of exigent circumstances * * *." *State v. Garmon*, No. 7580 (5th dist. Iowa April 21, 1976) (unpublished order). In its ruling on summary judgment motions, the district court specifically held:

> it was clearly established in the law that first class mail that had not yet reached the addressee could be lawfully subjected to search and seizure only by execution of a lawfully issued search warrant and there was nothing in the law to suggest that the warrant requirement would be abrogated if a private individual involved in the process of distributing mail into the hands of the addressees delivered possession of a first class mail item to a policeman.

*Garmon v. Foust*, Civil No. 77–367–2, at 5–6 (S.D.Iowa Feb. 11, 1983) (unpublished rulings).

In addition, in rulings from the bench, the court reiterated its conclusion that the package was still in the mail at the time it was seized:

> [T]here has been some talk about the package being out of the mail. That term has been used. I would note again that the facts are that the postal service had relinquished its custody of the package by delivery, along with the other Drake mail, to Drake or to the dormitory, but that it had not yet gotten to the addressee, and the Drake University people were the people who had the physical custody of it in order to pass it on to the addressee.
>
> I don't really attach any particular significance to the fact that the package was physically moved from one room in the dormitory over to another room where it was retained.

(Tr. 110–111)

In holding that the package was not in the mail at the time it was seized, the majority relies on a joint stipulation of the parties which states that the University employees "on their own initiative took the package out of the mail." This point was specifically considered and rejected by the district court. Moreover, the district court's conclusion was both legally and factually correct. In *Maxwell v. United States*, 235 F.2d 930, 932 (8th Cir.1956), we held for the purposes of the statute proscribing mail tampering, that a package is "in the mail" from the time it is placed in the mailbox to the time when it reaches the addressee. *Accord United States v. Ashford*, 530 F.2d 792, 795 (8th Cir.1976); *Ross v. United States*, 374 F.2d 97, 103 (8th Cir.1967). The same reasoning applies when fourth amendment interests are at stake. A person's expectation of privacy in his or her mail should receive the same level of protection whether or not it passes through the hands of private parties en route to the addressee.

Once we accept the district court's determination that the package was in the mail, then the issue becomes whether the warrantless seizure was nonetheless reasonable. In *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970), the Supreme Court clearly stated that the fourth amendment right of the people to be secure in their papers against unreasonable searches and seizures applied with equal force whether those papers were in transit in the mail or locked at home. While in the mail, papers and packages "can only be opened and examined under like warrant, issued upon a similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household." *Id.* (quoting *Ex parte Jackson*, 6 Otto 727, 96 U.S. 727, 24 L.Ed. 877 (1878)). The majority seeks to avoid the warrant requirement by characterizing the seizure as a temporary detainment pending issuance of a warrant citing *Van Leeuwen*. The crucial difference between *Van Leeuwen* and this case, how-

ever, is that the package was not merely held at the post office, but Foust took it back to police headquarters. This is not the type of limited detention based on a reasonable suspicion authorized by *Van Leeuwen.*

In the alternative, the majority holds that exigent circumstances justified the seizure of the package without a search warrant because "there was a risk that the package would be lost, either through mistaken delivery to Garmon, or in some other way." *Supra* at 1074. Not only is that factual conclusion inconsistent with the district court's finding of a fourth amendment violation, but it encourages a definition of exigency that is so broad that it nearly abrogates the warrant requirement. The package was in the hands of the University officials who had already put it aside for police inspection. Only the remotest possibility exists that the package would have been lost or accidentally given to Garmon.

Thus, primarily because I think the district court's finding that the package was in the mail at the time Foust seized it is not clearly erroneous, I would affirm the district court's judgment, including the amount of attorney's fees awarded.