[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16683
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00056-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TELESFORO LOZANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 5, 2017)

Before JULIE CARNES, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Telesforo Lozano Heredia (Lozano) appeals his convictions for (1) conspiracy to distribute 500 grams or more of cocaine or cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846; and (2) possession with intent to distribute 500 grams or more of cocaine or cocaine base, in violation of 21 U.S.C. § 841(a)(1). Lozano asserts multiple issues on appeal, which we address in turn. After review, we affirm Lozano's convictions.

## I.  DISCUSSION

### A.  *Motion to Suppress*

Lozano first contends the district court erred in denying his motion to suppress the evidence obtained from a search of his vehicle following the extension of a traffic stop for a dog sniff, because Officer William Barnes did not have reasonable suspicion that Lozano was trafficking drugs and had already completed the purpose of the stop by issuing a warning ticket.

Our review of a district court's denial of a motion to suppress is a mixed question of law and fact. *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007). We review for clear error the district court's findings of fact, construing the evidence in the light most favorable to the party prevailing below. *Id.* We review *de novo* the district court's interpretation and application of the law. *Id.* Whether an officer had reasonable suspicion to conduct a search or seizure is reviewed *de novo*. *United States v. Arvizu*, 534 U.S. 266, 275 (2002).

2

When police stop a motor vehicle, even for a brief period, a Fourth Amendment seizure occurs. U.S. Const. amend. IV; *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Law enforcement officers must limit the stop's duration to the time necessary to effectuate the purpose of the traffic stop. *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007).

To determine whether reasonable suspicion exists, we look at the totality of the circumstances to see whether the detaining officer, in light of his training and experience, had a particularized and objective basis for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273; *United States v. Smith*, 201 F.3d 1317, 1323 (11th Cir. 2000) (stating "behavior, seemingly innocuous to the ordinary citizen, may appear suspect to one familiar with the practices of narcotics couriers" (quotation omitted)). While reasonable suspicion does not require a likelihood of criminal activity rising to the level of probable cause and is a considerably lower standard than preponderance of the evidence, an officer's reliance on a mere hunch is insufficient. *Arvizu*, 534 U.S. at 274. A variety of factors may contribute to forming reasonable suspicion justifying further questioning, including having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements regarding the destination. *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). Further, officers may rely on relevant factors external to their observations specific to the suspect, such as

3

whether the location of the stop is in a high-crime area. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation").

The district court did not err in denying Lozano's motion to suppress, because the facts the officers were aware of supported an articulable reasonable suspicion Lozano was engaged in criminal activity, justifying the extension of the traffic stop for a dog sniff.[1] *See Arvizu*, 534 U.S. at 273. First, Barnes' and Martinez's testimony supported the finding that, at the time Barnes decided to continue Lozano's detention, he knew the following facts: (1) Lozano's truck had a clean exterior and dirty interior, suggesting Lozano was trying to blend in; (2) Lozano was leaving Mexico, a drug source country, and traveling to Atlanta, a drug hub; (3) Lozano's undetailed story regarding his intent to pick up a car in Atlanta, his lack of money, and his lack of a tow hitch on his truck, suggested his story was unlikely; (4) his Coahuila residence and recent truck registration in

---

[1] Lozano does not challenge the legality of the initial stop or the legality of the search following the dog alert. Accordingly, he has abandoned any such challenges. *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998) (stating when a defendant fails to offer an argument on an issue, it is abandoned). In any case, Barnes observed Lozano violate state traffic laws so the initial stop was constitutional. *See United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (holding "[a] traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion"). Additionally, assuming the legality of conducting the dog sniff, the subsequent search was constitutionally sound because the dog alerted. *See United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) (holding "[p]robable cause arises when a drug-trained canine alerts to drugs").

4

Chihuahua suggested his vehicle was a "throw-down" cartel vehicle; (5) the drywall screws in the windshield cowling suggested tampering; and (6) Lozano was acting nervous. *See Delancy*, 502 F.3d at 1304 (construing the evidence in the light most favorable to the prevailing party). Second, coupled with Barnes' and Martinez's experience, these facts provided Barnes with a particularized and objective basis for suspecting legal wrongdoing and justified the traffic stop's extension. *See Wardlow*, 528 U.S. at 124; *Pruitt*, 174 F.3d at 1220. Thus, Barnes had reasonable suspicion to extend the traffic stop and order the dog sniff. *See Arvizu*, 534 U.S. at 273. Accordingly, we affirm the district court's denial of Lozano's motion to suppress.

## B. Motion to Continue

Second, Lozano asserts the district court erred in denying his motion to continue the trial to obtain his wife's testimony and investigate other similar blind mule cases, because it deprived him of his right to prepare a defense.

Hearsay statements are statements, other than those made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, and are not admissible unless one of the hearsay exceptions applies. Fed. R. Evid. 801(c), 802. Foreign depositions are disfavored as evidence in criminal cases because the lack of a penalty for perjury and the absence of cross-examination renders them less reliable. *United States v. Alvarez*, 837 F.2d 1024,

5

1029 (11th Cir. 1988).  In moving to admit deposition testimony as evidence at trial under Fed. R. Crim. P. 15, the movant must submit evidence that exceptional circumstances—such as the witness' unavailability and materiality—justify using a deposition at trial.  *United States v. Kahn*, 794 F.3d 1288, 1306 (11th Cir. 2015).

The district court did not abuse its discretion in denying Lozano's motion to continue.  *See United States v. Valladares*, 544 F.3d 1257, 1261 (11th Cir. 2008) (reviewing for abuse of discretion a district court's denial of a motion for continuance).  First, Lozano has not shown exigent circumstances existed sufficient to justify admitting his wife's foreign deposition or other similar evidence at trial, because he had not offered any proof, beyond his bare assertion, that she could not enter the United States.  *See Kahn*, 794 F.3d at 1306.  Further, he has not offered any evidence showing the other drug trafficking defendants' testimony, the memorandum from the United States Attorney's Office in San Diego, or the State Department's travel advisory would be relevant to his personal knowledge or willful blindness.  Fed. R. Evid. 402.  Additionally, the memorandum from the United States Attorney's Office in San Diego and the State Department's travel advisory are hearsay, because they are statements, other than those made by the declarant testifying at the trial or a hearing, that Lozano sought to offer to prove that drug trafficking organizations use blind mules.  Fed. R. Evid. 801(c).  Lozano did not attempt to illustrate the memorandum or travel advisory

6

would have been admissible under one of the exceptions to the general exclusion of hearsay evidence. Fed. R. Evid. 801(c), 802. Moreover, he cannot show that having his wife's testimony, the other drug trafficking defendants' testimony, the memorandum, or the travel advisory admitted as evidence would have changed the outcome, because there was sufficient evidence in the record—for example, Lozano's nervous prayers as the officers searched his truck before finding the cocaine—from which the jury could have found he had actual knowledge of the cocaine in his truck. *See Valladares*, 544 F.3d at 1262, 1264 (providing an appellant must show the denial of the motion for the continuance resulted in specific substantial prejudice by identifying relevant, non-cumulative evidence that would have been presented had the district court granted his request and the evidence must indicate a different outcome would result). Accordingly, we affirm the denial of Lozano's motion to continue.

## C. Agent Overstreet's Testimony

Third, Lozano contends the district court abused its discretion in admitting Special Agent James Overstreet's testimony regarding the *modus operandi* of drug trafficking organizations' courier recruitment and denying his motion for a new trial on that basis, because Overstreet's testimony was unfairly prejudicial and violated the rule against expert testimony on the ultimate issue in a criminal case.

7

Expert testimony is permitted if "specialized knowledge" will help the jury "understand the evidence or . . . determine a fact in issue." Fed. R. Evid. 702(a). Knowledge, skill, experience, training, or education may qualify an expert. *Id.* We have held drug trafficking operations are a proper subject for expert testimony under Rule 702, and that an experienced drug enforcement agent may testify about the "methods of operation unique to the drug distribution business." *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (holding that an expert's testimony about "how drug trafficking organizations compartmentalize certain operations and roles was highly probative" to help the jury understand how the conduct of participants might further the goals of the drug trafficking organization (quotations omitted)).

Expert witnesses, however, may not express an opinion a defendant did or did not have the mental state or condition that constitutes an element of the crime charged or a defense to that crime. Fed. R. Evid. 704(b). Nonetheless, even when an expert's testimony gives rise to the inference the defendant had a particular mental state, the expert's testimony does not violate this prohibition unless he specifically states the inference. *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008).

The district court did not abuse its discretion in finding Agent Overstreet's testimony was admissible or in denying Lozano's motion for a new trial on the

8

basis of Overstreet's testimony.[2] *See United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007) (stating we review for abuse of discretion a district court's denial of a motion for a new trial); *Garcia*, 447 F.3d at 1334 (providing we review evidentiary rulings, including whether to admit expert testimony, for abuse of discretion). Overstreet's testimony, which focused on drug trafficking organizations' recruitment of couriers, efforts to avoid detection, and other operations, is the kind of drug enforcement agent expert testimony this Court has held is admissible. *See Garcia*, 447 F.3d at 1335. Overstreet's testimony was highly probative, because it could help the jury understand how Lozano's conduct fit within drug trafficking organizations' operation and led Barnes and Martinez to develop suspicion and search his vehicle. *See id.* Moreover, while Overstreet's testimony on cross-examination—that the blind mule theory, in his experience, did not have a factual basis in any of the cases he had investigated—may have created the inference Lozano was not a blind mule, Overstreet did not violate the prohibition on ultimate-issue testimony because he did not specifically state Lozano had knowledge or was willfully blind. *See Steed*, 548 F.3d at 977. Thus,

---

[2] Lozano's arguments—(1) that he should have been granted a hearing to test whether Agent Overstreet's testimony would be admissible, and (2) that Overstreet was not qualified as an expert witness—are waived, because Lozano did not raise them in his initial brief. *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004). Lozano has abandoned any arguments that Agent Overstreet's testimony had the potential to confuse the jury, lacked probative value, was not previously disclosed by the Government pursuant to his request, or did not concern a topic complex enough to warrant expert testimony, because he did not sufficiently present those arguments in his brief. *See Cunningham*, 161 F.3d at 1344.

the probative value of Overstreet's testimony was not outweighed by unfair prejudice. Fed. R. Evid. 702. Accordingly, we affirm the district court's admission of Overstreet's testimony and denial of his motion for a new trial.

## D.  Prosecutorial Misconduct

Fourth, Lozano argues the Government committed prosecutorial misconduct by allowing Overstreet to give false and tainted testimony without correcting it.

A district court's underlying determination regarding prosecutorial misconduct is a mixed question of law and fact, which we review *de novo*. *See United States v. Noriega*, 117 F.3d 1206, 1218, 1220–21 (11th Cir. 1997) (concerning an allegation the government failed to correct a witness' false testimony). A prosecutor violates a defendant's due process rights when he fails to correct false testimony, regardless of whether he solicited it from a government witness. *Id.* at 1221. To prevail in a claim of prosecutorial misconduct for failing to correct false testimony, the appellant must show "the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001) (quotations omitted). False testimony is material if there is a reasonable likelihood that it could have affected the judgment of the jury. *Noriega*, 117 F.3d at 1221.

The district court did not abuse its discretion in denying Lozano's motion for a new trial on the basis of prosecutorial misconduct. *See Perez-Oliveros*, 479 F.3d at 782. Lozano cannot meet his burden to show the Government failed in its obligation to correct false testimony, because he presented no evidence that Overstreet's cross-examination testimony—that, in his experience, he had not investigated a case in which he had found proof that blind mules existed—was a falsity. *See Dickerson*, 248 F.3d at 1041. Moreover, because sufficient evidence to find Lozano had actual knowledge of the cocaine in his truck existed in the record and the jury did not designate whether it found he had actual knowledge or willful blindness, as discussed above, he cannot show there is a reasonable likelihood that Overstreet's allegedly false testimony affected the jury's verdict. *See Noriega*, 117 F.3d at 1221. Accordingly, we affirm the district court's denial of Lozano's motion for a new trial on the basis of prosecutorial misconduct.

*E. Jury Instruction*

Fifth, Lozano asserts the district court abused its discretion in instructing the jury on willful blindness, because (1) the Government did not show that Lozano was aware of a high probability that drugs were secreted in his car or that he purposely avoided learning all the facts; and (2) the instruction was inconsistent with the Supreme Court's decision in *Global-Tech Appliances, Inc. v. S.E.B. S.A.*, 563 U.S. 754, 775 n.9 (2011).

11

A willful blindness, or deliberate ignorance, instruction is warranted only when the facts support an inference the defendant was aware of a high probability of the existence of a fact in question and purposely avoided learning of all the facts. *Steed*, 548 F.3d at 977. Although the district court should avoid instructing the jury on deliberate ignorance where the evidence points only to actual knowledge, we have held that deliberate ignorance instructions are harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge. *Id.*

In *Global-Tech Appliances, Inc.*, the Supreme Court held "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." 563 U.S. at 769. We have distinguished *Global-Tech* from the criminal jury instructions regarding willful blindness, because it was a civil case concerning patent infringement, and "did not abrogate, conflict with, or preclude the district court from giving the . . . pattern charge." *United States v. Clay*, 832 F.3d 1259, 1313 (11th Cir. 2016) (concerning the pattern instructions for healthcare fraud under 18 U.S.C. § 1347).

The district court did not abuse its discretion in giving the jury the willful blindness instruction, because evidence—including Lozano's nervous prayers as the officers searched his truck before they found the cocaine and knowledge that

12

drugs were smuggled from Mexico into the United States—supported an inference he was aware of a high probability he was transporting drugs. *See Steed*, 548 F.3d at 977 (reviewing a district court's jury instructions using a deferential standard of review, reversing only if we are left with a substantial doubt as to whether the jury was properly guided in its deliberations). Lozano's testimony regarding his attempts to avoid questions from U.S. Customs officials, that he only responded to his boss' questions, that he was sent to tow a car despite lacking experience towing cars, and that, although cars can be purchased between El Paso and Atlanta, the Atlanta destination "was not up to him" created an inference he deliberately avoided learning more about the nature of his tasks. *See id.* Moreover, because Lozano testified he did not know cocaine was in the truck's engine compartment, despite having looked into the engine compartment, the evidence did not suggest only a theory of actual knowledge, such that a willful blindness instruction would be inappropriate. *See id.* Further, Lozano's argument the pattern willful blindness instruction the court gave violated the Supreme Court's holding in *Global-Tech* is unavailing because this Court has distinguished that civil case's holding from the criminal context. *See Clay*, 832 F.3d at 1313. Accordingly, we affirm the district court's decision to give the pattern willful blindness instruction.

13

*F.  Cumulative Error*

Sixth, Lozano contends cumulative error resulted in him being denied a fair trial.  Lozano cannot show cumulative error denied him a fundamentally fair trial because, as discussed above, he has not shown an individual error occurred.  *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (explaining where there are no individual errors or only a single error, cumulative error cannot exist).

*G.  Sufficiency of the Evidence*

Finally, Lozano argues summarily in one sentence the evidence against him was insufficient to sustain his conviction.  Lozano does not develop his argument or present any law regarding the insufficiency of the evidence to support his conviction, and, consequently, he has abandoned this claim.  *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998).

## II.  CONCLUSION

Based on the above, we affirm Lozano's convictions.

**AFFIRMED.**